## CIRCUIT COURT OF FAIRFAX COUNTY

Stratford Marine Corp.

v.

Fairfax County Board of Supervisors

February 7, 1986

Case No. (Chancery) 88406

By JUDGE THOMAS A. FORTKORT

The case at bar involves the denial by the Fairfax County Board of Supervisors of Petitioner's application for a fill and grade permit on property Plaintiff owns adjoining Little Hunting Creek. The property is known as Parcel 1 and Parcel 2 Lot A Section 20A, Stratford Landing.

The property runs from Thomas J. Stockton Parkway to the low water mark on Little Hunting Creek. The existing lots fall irregularly from the road level of Thomas J. Stockton Parkway approximately 14' to the water level of Little Hunting Creek. The proposed fill and grade would create a gently sloping piece of land from the road to the creek.

The record shows many charges and countercharges, but in the opinion of the Court, the case resolves to this issue. Although the County staff gave three reasons to oppose the fill and grade application, the Board of Supervisors limited its discussion and posited its denial of the application on the ground that the fill would destroy wetlands. If, in fact, the land does contain wetlands as defined by the State Code and the later Fairfax County Code pursuant to the power granted in the State Code, then the Board's denial of the fill and grade permit is not arbitrary. If there are no wetlands on this property

and no other explanation for the denial of the application is given, then the Board's action may be capricious.

The Petitioner has made several allegations. One is that a Planning Commission member who lives in his sub-division and is or was president of the local civic association used his position to lobby Board members to defeat the Plaintiff's fill and grade application. No reliable testimony substantiates Petitioner's claim and even if the gentleman in question did seek to have Petitioner's application denied, is any duty breached? The Court thinks not.

Petitioner claims the County staff set unreasonable conditions to be met by Petitioner should the Board grant his fill and grade permit. First, that point is moot, since the fill and grade permit was denied. Secondly, the conditions recommended to the staff of the Board of Supervisors were reasonable considering the environmental fragility of the land.

In support of its wetlands contention, the County produced two experts, who testified that the land in question contained wetlands within the proposed fill area. The County surveyor testified that the proposed fill lay between mean low water and mean high water, the state statutory definition of tidal wetlands. The surveyor used as reference points stakes which measured the Potomac River flow at Mt. Vernon and, using normal surveying procedures, fixed those points on Plaintiff's property some one mile away.

The problem with the County Surveyor's methodology is that the Potomac River siltage is nowhere close to the silting of Little Hunting Creek. Little Hunting Creek is a tidal estuary which has received large amounts of silt from nearby development. Abandoned boat docks which less than 15 years ago contained boats, now lie over 100 yards from the creek water. It is not likely that the mere transposing of the Mount Vernon marks to the Petitioner's property have any current validity.

The second expert, Professor Kenneth Moore, of the Virginia Institute of Marine Sciences, testified that the subject property contained vegetation of the type described in State Code Section 62.1-13.2(F). While the professor assured the Court that his identification of these plants was the normal procedure for establishing wetlands statewide, the Court remains doubtful. The Court

cannot understand how under the statute mere identification of plant life without reference to mean low water and mean high water would denote an area as wetlands.

While Petitioner has cast doubt on the expert testimony that his land contained wetlands, he produced no evidence in his behalf that the property was free of wetlands.

The protection of wetlands is by now the well-settled policy of this State. The denial of the Petitioner's request to place a large amount of fill in this environmentally sensitive area, which the Board believes contains wetlands would appear to be a rational exercise of the Board's decision-making power. If the Board's wetlands assumption is incorrect, the petitioner has failed to prove it.

The Petitioner's final argument is that the County published a wetlands overlay district which excluded his land. The overlay district was delineated by a map which designated the area of wetlands in the County. Plaintiff's property was not included as wetland property. Plaintiff argues that the County was bound by its own pronouncement and that to later deny his application for a fill permit on the grounds that his land contained wetlands, contrary to the County's own publication was unconstitutional.

The argument is generally that once the County proclaimed a certain area is not wetlands, it is bound by that proclamation and cannot deny a special use permit because the land did contain wetlands. The Court believes such an interpretation is overly broad.

A landowner might reasonably expect that his land containing a certain zoning designation as a result of a carefully crafted comprehensive plan will not be downzoned arbitrarily by the County. This expectation leads to orderly sale and development of the land and establishes reasonably reliable marketing values to the land.

A special use permit is a different matter. By definition, a special use is an unfavored use. The only prudent expectation that one can have when applying for a special use permit is that it will not be easily granted. The conditions governing the issuance of a special use permit vary with the impact of the use on changing neighbor properties.

The constitutional expectation is that the application will receive a fair hearing under due process standards. The

County publication that a particular area has wetlands is not the legal equivalent of declaring a certain area is a particular zoning class. The non-designation of defendant's property as wetlands may improve his chances of obtaining a special use permit, but does not place anyone on notice that a special use permit will be granted. Other cogent reasons may exist for denying a special use permit.

Thus, community expectations as to whether a special use permit will be granted are not changed. The special use permit remains an elusive goal strictly within the discretion of the Board of Supervisors. A denial of his application does not change the Petitioner's position so that he has suffered a diminution of his land value without just compensation. His expectation of favorable action on his special use permit remains doubtful even after the wetlands overlay designation.

The County produced evidence that the subject property contained wetlands. The Plaintiff produced no positive evidence to the contrary. He was able to cast some doubt upon the process of determining wetlands used by the County. The County has proven to this Court that at least its action was "fairly debatable" and its denial of the special use permit is upheld.